Our next case on the docket is Xerox Corporation v. Meta Platforms, Appeal No. 23-1714. Mr. Ryman, you can proceed when you are ready. May it please the Court. My name is Kyle Ryman and I am representing Xerox Corporation. Xerox is appealing the Board's cancellation of the 475 Patents Challenge claims during Inter Partes Review. The Board's decision should be reversed or at minimum vacated and remanded for three reasons. First, the Board misconstrued proximal information. Second, the Board erred in its obviousness analysis. And third, the Board failed to properly consider Xerox's evidence of unexpected results. I'll start with claim construction. Proximal information requires three aspects. It requires information near or derived from a link. That's a proximity requirement. That information must characterize the content accessible through the link. That's a characterization requirement. What do you think is the best place in this specification for your characterization argument? Your Honor, we think the best place is Appendix 74, that is Column 3, Lines 43-45. Which lines? Lines 43-45, Your Honor. What about the fact that it says in various exemplary embodiments and it says such as? I mean, I'm just having a hard time reading this and understanding it to expressly define or even implicitly define proximal Q information to require that it be as limited as you're suggesting. Sure, Your Honor. So we think that what the specification is shedding light on is the claims definition. It's not necessarily right there using explicit words like define. However, it is what the specification does say is that is why it's useful. As we cite in our gray brief, the Trustees of Columbia case, it's not required for the specification to explicitly define a term. I agree with you. I'm sorry I used that phrase. Please understand that I'm not saying it has to expressly define. What I'm looking at is I look at your specification and I see that it gives examples of what proximal information is. It's all definitely information that's near the link or brought up as part of the link, but I don't see where it's required to meet the other limitations that you have in your proposed definition. There's examples, for example, of having the word A, and that would not meet your requirement. So I think that is a characteristic of some proximal information, but it's not necessarily a characteristic of all proximal information in the specification. So what is your response to that observation by me? So direct to that, Your Honor. So the board discounted the characterization requirement, for example, with the word A. We would disagree. That does not characterize at all. The letter A is in the context of by a gift certificate. When associated with a link, and I'll touch on the association requirement here in a moment, that provides some amount of characterization that on the distal side of that link, there is at least one gift certificate to be purchased. We didn't argue that there... Under that interpretation, what wouldn't be a characterization? Well, Your Honor, so we never argued before the board that there has to be some absolute degree of characterization. It doesn't have to characterize 100%. What we said is there has to be some amount of characterization. But... Do you agree that the board found obviousness even under Xerox's claim construction? Yes, I do, Your Honor. And so with that being said, what I... That said, I didn't see anywhere in the board decision that we would bring here a defense from you to the argument that it doesn't make any difference what the claim construction is. The board is, in essence, saying the claim construction issues are relevant because even under your claim construction, all of our analysis under 103 is the same. And I didn't see you arguing any of the prior references or any of the motivation to find any of those arguments dependent on your different claim construction. So, Your Honor, our defense to the obviousness analysis is independent of claim construction. We think that we win. We think that the board... Unless you explain why the board was wrong in saying that the analysis is the same regardless of the claim construction, then why do I care whether the board made a mistake in claim construction? It's a great classroom problem, but in the real world, it's not a problem because we've had a hold on you that you didn't challenge. So, Your Honor, in fairness to the court, the way the court could write its opinion is to say we looked at the secondary considerations. Well, did you challenge? I mean, did you challenge the argument that even under the lower claim construction... Well, yes, Your Honor. ...there was a prima facie case? I may have been a little imprecise a moment ago. So, whenever we say that the board improperly gap-filled with the proceeders' knowledge to find proximal information, that depends on winning the claim construction argument because what the board found within the proceeders' general knowledge is the association requirement. But what I'm trying to get at is why do we need to decide the claim construction issue? So, Your Honor... Because we can say the prima facie case is the same either way, because we don't challenge that. So, then we'll address secondary considerations, but secondary considerations don't depend on the claim construction. So, not quite, Your Honor. So, it depends on which part of the prima facie analysis the court addresses. So, on the gap... You're not telling me you made any challenge at all to the proposition that the prima facie case is the same regardless of the claim construction. You have various arguments that you raise on appeal. Do any of them rely on our adoption of your claim construction? Not for characterization, for the association requirement, though, Your Honor. For the... Where does it say that precisely in your brief? Well, so, Your Honor... Excuse me. You said that it was in the brief. Now is the time to tell me what. Well, yes, Your Honor. So, where we challenge what a pro cita would have known from the general... So, to be clear for the court, we do not use the explicit phrase that we are challenging the prima facie case of obviousness and what a pro cita would have known. We don't use the phrase explicitly that this depends on claim construction. But those arguments do depend on the association requirement. So... How are we to know that when we look at your brief? So, Your Honor, it's where we're talking about what the... I understand, Your Honor. So, what we say is, direct to the court's question, we need to win the association requirement to win on the obviousness analysis with the board's improper gap filling for what a pro cita would have known generally in the art. Because what the board found and what Meadows references do disclose are that words near text was in the art. What's not in Meadows references... Could you tell me exactly what pages of your brief, which exact issue in the table of contents I am to understand is an argument that you make only if you win on your claim construction? So it's very clear to us. So, Your Honor, we would say that our brief 35, where we are discussing what the board found was suggested in the prior art, and then specifically our discussion of the extrapolation of what was found in the prior art. That's the Arundi case we discussed at pages 39 through 40 of our brief. We would say that under Arundi, the board improperly extrapolated from what was disclosed in the references to find... That's teasing a lot of information out of general statements, isn't it? Well, we would say yes, Your Honor. We believe the board... But, I mean, you cite page 35. All right, I'm going to read the words you're talking about. First paragraph, second paragraph, two paragraphs on page 35. And what we're looking for is an argument to say that claim construction does matter for purposes of the prima facie case. Well, Your Honor, we do not have a statement that clear in reference to the court. So not that clear? No, we do not use those precise words, Your Honor. Okay, so tell me what on page 35 I should interpret to be words that convey the information that I just spoke of. So, Your Honor, we're on 35, the first paragraph, where we're citing Appendix 41. What the board stated was that, quote, the combination of here, Ching, and Callahan suggests... This is in the parenthetical? Yes, Your Honor. Is there anywhere in the parenthetical? That's where we reserve this argument? In that parenthetical? Well, Your Honor, we think that we argue it throughout. Okay, understood, Your Honor. But what I would say is, regardless of claim construction, on the motivation to combine, what we would say is under the... Can I ask you something just to be clear?  Here at oral argument today, you are conceding that if we don't agree with your claim construction, then you would not make the arguments on page 35? Is that what you're saying? Your Honor, if the court did not agree with us on claim construction, then what we would concede is that our arguments on the gap filling, the improper gap filling, and I want to say that is... I'm looking up a section so I can get the court something. Why not your argument on the prima facie case? Where have you preserved any element of the prima facie case argument? Saying, well, we agree here on one point, but we're preserving this. Well, Your Honor, I don't think our motivation to combine argument depends on the claim construction piece or the reasonable expectation of success. So the motivation to combine argument can be either way. The motivation to combine is regardless of which claim construction we accept. Yes, Your Honor. Well, that's what we're trying to establish here. You're using up very valuable argument time on a point where you could have conceded very easily, which is to say the claim construction argument is academic. Move on to the secondary considerations where you may be at a lead, but you're almost out of time. Understood, Your Honor. So what we would say on the prima facie... I'm sorry. I've got to ask you one more question. Yes, Your Honor. I don't get to move on. Just in terms of what you're conceding, it sounds like you're conceding that all of the limitations were disclosed except for potentially proximal information. Is that correct? Yes, Your Honor. Okay. And then, of course, we've had the discussion about the board actually adopting Xerox's construction and finding the obviousness, even with that Xerox construction in play. I'm sorry. I didn't quite follow the end of that, Your Honor. Maybe I'm making a statement to you. Maybe I didn't pose a question. Let me actually give you a question on this. Are your only reasons why you're contending that obviousness should not apply are going to be motivation to combine? And I think you said one other thing. Three reasons, Your Honor. Motivation to combine, reasonable expectation of success, and secondary considerations of non-obviousness. You can go ahead and turn to those. So, briefly, Your Honor, on motivation to combine, what we would say is that the board had additional explanation that it needed to do. Under the Portional Web case, this is complicated technology. The board needed to do more than just uncritically accept summaries of Meadows' arguments. The summaries also fail under this Court's decision in re-invasive, where the Court said that is not substantial evidence to summarize a party's arguments. On obvious to try theory, Your Honor, the Greenenthal case, for obvious to try, there would need to be a finite number of solutions for a procedure to try. And here, there is nothing in the record to support there are a finite number of solutions, and so the board relied on. That requires us to agree that the board imposed an obvious to try analysis, right? Your Honor, yes, and my friends on the other side say the board did not use those words. But the board did say that it was relying on, quote, testing or otherwise. Can you put us to your best page to support that an obvious to try argument was actually discussed by the board? Sure, Your Honor. So on page 52 of our blue brief, we cite Appendix 32. So Appendix 32, Your Honor, it says that a procedure would be able to include proximal information, quote, in an appropriate manner, and then it adds the phrase through testing or otherwise. And so we think functionally the board relied on obvious to try theory relying on testing or otherwise. Your Honor, the secondary phrase testing or otherwise. Yes, Your Honor. I think that's a good indication. And that doesn't relate to reasonable expectation of success. Not in the Meta Appeal, Your Honor. On secondary considerations, Your Honor, well, we would say we go through the Clasco case, the Apple v. Clasco case, and we think under that case where the embodiment is narrower than the claims, a presumption of nexus must be presumed. And once the court makes that finding under the court's Volvo decision, the board did no explanation for its weighing of the evidence. And so at minimum. What do we do with the fact that your patent owner response has only one paragraph directed to reasonable expectation of success? And what is in that one paragraph? What should I point to for understanding? I'm sorry, on your secondary considerations. I apologize. Not reasonable expectation of success. But what am I to understand to be the unexpected result? The unexpected results are the statistics, Your Honor. The improvements in accuracy and reductions in data model complexity recited in the. Mr. Joint, could you point that out to me in the patent owner response? Honestly, it's at page, I think it's 61. That's what I was looking at. Page 61. Several secondary considerations are relevant here. It says, first, the inventor's results were unexpected and resolved an ongoing need for a better solution. And then most of the rest of the paragraph is talking about what seems to be more like need for a better solution. Your Honor, are you looking at page 61 of the opening brief? No. I'm sorry. It's appendix page 392. It's page 61 of your patent owner response brief. I'm just trying to understand what the unexpected results are. No need on the bones. Yeah, yeah, exactly. It says the inventor's results were unexpected, but then there's nothing developing that. You're looking at appendix 392, Your Honor? Yes. Starts on 391, secondary considerations. So, Your Honor, on appeal we did not raise all the secondary considerations, so just to clarify the court. Now, as far as the need on the bones point, what I would suggest for the court is that we did chart at the opening, at the beginning of our patent owner's response, we charted how the invention proposal mapped on to our claims. And then, so that's that appendix. There's no need for the need on the bones on the secondary consideration argument. Your Honor, I believe I'm out of time. May I respond to the court's question? Yes, please. So, you're looking for the need on the bones on the argument, Your Honor? And I believe that was the presiding judge's question, was whether or not she sufficiently raised her secondary consideration argument. Thank you. Your Honor, I think where we... Is it actually the final paragraph of your patent owner's response? Yes, Your Honor, what we pointed to for the need on the bones is we pointed to Dr. Martin's declaration. And what he was talking about is how the inventors and their colleagues had... Originally incorporated by reference? Well, we did quote Dr. Martin, Your Honor. So, at the middle of that paragraph, we say, as Dr. Martin explained... Can I show that? Yes, Your Honor. But that shows there's an unresolved need for a better solution. And that is not the secondary consideration that I see you raising on appeal. Am I wrong? You are correct, Your Honor, that that quote from Dr. Martin does state that it is relating to an unresolved need. But at a little bit higher, what we are citing to that id, that paragraph 145, that is all Dr. Martin's testimony. So, if the question is did we put the percentages in this paragraph, the answer is no, we did not. I just am having a hard time seeing where the board erred on this when there's no need on the bones, as Judge Clemenger so aptly put it. Understood, Your Honor. All right, well, thank you. Can I just ask one question? Can we kind of talk all throughout the meeting's time? One question about the plan of construction. My understanding for why you were pressing for a different plan of construction on proximal information is that without it, the definition of multi-motor information swells proximal. That's absolutely right, Your Honor. I mean, you said it that way in your brief, but otherwise, what's the difference between the two? That's exactly right, Your Honor, and that's why we see a distinction between the two. That type of a sentence to set up your argument as to why you need the plan of construction really rivets one's attention and shouldn't rely on a little senior judge to have to figure that out. Understood, Your Honor. Thank you. Good morning.  So I want to make sure that I'm being the most helpful, so should I go straight to the secondary considerations piece? That would be great. Okay, thank you very much, Your Honors. So with respect to the secondary considerations piece, I think Your Honors nailed it. There's really no meat on the bones in the argument presented here on appeal, and in fact, there is substantial evidence in the record. But the board didn't reject the whole point on that ground. That's right. And so it would be a little aggressive of us to say we're not even going to look at the secondary consideration issue because there were no meat on the bones. That's fine, Your Honor. And in fact, we're going to get to the guts of it. Absolutely happy to do so. Why don't you talk about CLASCO? So here, for example, right, we're talking about whether or not there is this presumptive connection of nexus, right? Right, and so here, Your Honor, there's absolutely no nexus whatsoever. And so let me start with there is no nexus at all, not even whether or not it's swallowed or not swallowed. That's because you're telling me there's no product and it's just an invention disclosure and that's too vague. That's part of it. That's only part of it, though. The second part of it, which the board specifically found, and this is in appendix at page 52, is that the information disclosure constantly talks about the demand to weight the proximal scent terms. And he cites to appendix 2731 through 2734. And I have that here in front of me. That's the rating? Yes. And so that's in the information. Well, but isn't the problem that the rating is in the dependent claim 6 and 15? Well, but it's not about always having to do that. And in fact, we know. We know not about always having to do it. Well, because for the independent claim, at a minimum, there's absolutely no nexus whatsoever because there's. . . I'll reassure you on the independent claim. But are you going to tell me under CLASCO we ignore the dependent claims? No, no. I don't ever say you ignore the dependent claims. The dependent claims themselves, perhaps one of the dependent claims. . . Why don't the dependent claims teach what the information disclosure will say? Again, I don't actually believe that the dependent claims discuss specifically weighting the proximal information. They talk about weighting the content information. What was the grounds that the board used for saying that there's no presumptive nexus based on the commensurate relationship of the claims to the information disclosure? So the board did use. . . No sense because of the weighting, right? The board did use, in fact, the weighting. That's on page 52 of the decision. And the board said that that alone was enough of a reason to say that there is no nexus between the two. The board also commented and acknowledged that there was no product, that there was nothing that was. . . Well, no, there's no product. But, I mean, let's just assume we're going to take the information disclosure as sufficient as a surrogate for the product. So the board also. . . No weighting. The board also commented specifically on the fact that they had never said what the need was. And so you can't figure out what the nexus is if you don't even know what the need is to see if the need matches up. And that's at appendix higher up on page 52. My point is I thought Claims 6 and 15 dealt with weighting the proximal centers. So Claims 6 and 15 talk about weighting the vectors that represent that proximal information. That's yet another step. That's close enough, right? I would argue it's not because it's not saying that. . . Did the board explain that? The board did not specifically explain that. So the board gave us an opinion that's ambiguous. I don't think it was ambiguous. It didn't expressly delineate this nice distinction you're making, correct? It did not. You are correct about that, Your Honor. Did the patent owner ask for any sort of consideration of these dependent claims? No, they did not. Did the patent owner talk about presumption of nexus? No. Did you say that there was no nexus? We said that we found no nexus. We argued that there was no nexus based in combination on the fact of weighting, but we also focused on the fact that none of these were objective information. All of these, and this is under the Amazon v. Barnes & Noble case, as well as the Amazon v. Barnes & Noble as well as RICO Manufacturing v. Newstock, which basically say that if all you're doing is pointing to what the inventor said he thought was not inventive, that's not enough. It can't create a nexus because it's subjective information. The exact quote from Amazon was what Lockwood personally realized is irrelevant. All that matters is the hypothetically ordinarily skilled person, which isn't discussed here at all. If, in fact, Your Honors were to accept that you could create a nexus and an argument based solely on a piece of paper filed by the inventors that said, I thought this was hard, then there could never be 103. Because in order to file for a patent application, the inventors have to say they think it's non-obvious. And so one cannot be met with the other. And that's what the case law talks about, the importance of the objectivity versus the subjectivity. We're asking now for an opinion as a matter of law that the information disclosure is insufficient. Yes, I think that would be appropriate. We didn't ask for that in your brief. I think we came very close to that. This is another one of those, oh, we came very close because we quoted a parenthetical or something. But why in your brief did you ask us to rule as a matter of law that there can be no nexus here because the thing to which you're trying to next is legally irrelevant? That's your argument to me right now. Let me get you a cite, Your Honor. I'm too arrogant to figure out these arguments that you guys invented all argument out of a parenthetical or something. No, I understand, Your Honor. What we said was that the subjective belief is not enough. And that was both below and here. And the board found the same thing. And so that's what we said. Where is the board's finding on subjective belief? And your subjective belief equates with the information disclosure? Yes. And that's also at? Where is that a finding? Where is it in the board's opinion, please? In the board's opinion, it's at 52. Let me get that for you. Thank you. So the board at 52 talks about the invention proposal relied upon by patent owner indicates all of these things. There's little or no evidence to support a presumption of nexus or nexus. For example, it talks about the weighting, and that's what we just talked about. However, none of the challenge claims require weighting, let alone specific weighting. So the board's subjective belief is not to be found in that paragraph, right? You are correct, Your Honor. But this paragraph is all about nexus, right? That's correct. The board does, however, cite to, and let me just get you the page here, Your Honor. Give me one second. The board specifically cites to both Amazon and RICO, and I believe it's right in the same region. And that's where the board says that the subjective is not something that they would consider. I want you to find that page, but also just talking back with regard to Claims 6 and 15. Say that again. I know you're looking for that page, and maybe your co-counsel can help you find it. What I was thinking right now, though, is going back to Claims 6 and 15, some of the discussion we've been having. I know you pointed out that vectors would be different, but the way I read 6 and 15, one talks about vectors, but the other does not in terms of the proximal information. So I wondered if your argument differed depending on which claim you were looking at there. No, so for 6, it definitely does include the vector, and I think that does make a distinction. In 15, I actually think it's a little bit ambiguous whether or not the weighting goes just to the multimodal versus the proximal. I think the weighting circuit has that information, but we don't know. The answer truly is I don't think it changes my argument, but I could see an argument the other direction, but still substantial evidence would support that there isn't any evidence built up that there's enough of a nexus with the IDS, and the IDS is completely subjective. It's just the inventors talking about their own subjective belief. I would also point out, Your Honors, that the other article submitted vis-a-vis secondary considerations by the inventors cited by Pat Noner, which is the Separating the Swarm article, actually refutes any argument of unexpected success or secondary considerations, and this is at 2726, where it says that this is far from surprising. Intuitively, the words that the user sees during each session are good indicators of their information needs, and so that's actually something that refutes any secondary considerations. Can I ask you also, are you relying on the bottom paragraph on page A49? This is what I was talking about with your opposing counsel, which is, you know, what the board says it's not clear what specific unexpected results the Pat Noner relies upon. Yes, absolutely, because if we don't know what they are, we can't even discuss them or figure out if there's a nexus based on that at all, and that actually is something that we pointed to in our briefing, as well as the board pointing out that it didn't know what this need even was. Unexpected results. Unexpected results, yes. And just so your honors have the citation, the subjective analysis is actually on Appendix 30, where specifically Petitioner also, this is the board, saying that Petitioner persuasively notes the argument is based on subjective inquiry irrelevant to obviousness, citing to both RICO and to Amazon versus Barnes & Noble. Assuming that we disagreed with you and felt that Claims 6 and 15 sufficiently relate to the claim subject matter or the subject matter we would dig out of the information disclosure, so that there's some secondary considerations in play, then assume then that we're faced with the board's conclusion of the balancing of the Pruner-Fisher case with the secondary considerations?  And for that, we only have one sentence, I believe, on page 57. That's correct. It says, even if some weakness exists, ensuring bonds outweighs the evidence of obviousness, right? That is the sentence that we have, however... There's a similar sentence on that topic. Yes, your honor, I agree, but you have to take that in conjunction with... Have you read the Palo Alto opinion that came down after these opinions were issued? I believe that I did, but I am foggy on the air. Palo Alto says that it had a situation in which a board had done a balancing analysis, and the evidence actually had done a little more than this, and we rejected it and said the board has to be specific. So this sentence, one sentence, starting with even if, can't survive under Palo Alto. What I would answer, your honor, is that it's not just the obviousness. The entire obviousness determination is not dependent solely upon that sentence. Instead, you have to also take into account... Where is there any showing that the weak nexus that the board is willing to concede might have existed, which would exist if 6 and 15 kept the issue alive? Where is there any discussion in the room on, say, why that prima facie case outweighs it? Is there an analysis of the balancing? There's not a discussion on the balancing. But there is, however, back on page 30 and 31... Let me tell you, when you get here and read Palo Alto, you may ask yourself why you didn't have an obligation to raise that case and talk about it in written. I will take a look at your honor, and I apologize if we should have. But I also believe quite strongly that the board's decision is also supported by the language at pages 30 and 31, which preceded this entire discussion. 30 and 31, background discussion? No, this is in appendix 30 and 31. This is talking about why the subjective beliefs of the inventors are not relevant to obviousness. And so he frames the argument that way. So now you're using that argument to come back and undermine the information disclosure. Yes. But that's not responsive to my question about how assuming that some weak nexus exists, why this analysis on page 57 isn't legally insufficient under Palo Alto. And my only answer... I mean, you can't address that claim because you can't have it read Palo Alto. My only answer to your honor would be that even if there weren't enough of an answer vis-à-vis the nexus, I am saying that there is enough of an answer about the totality... What I'm saying is that you were hoping to find error in other members of the panel, including you, right? That's right. And so assuming we disagree with you on that... Assuming you disagree that it would be okay for an inventor to put in a piece of paper that says, I don't think this is obvious, and that that is enough in and of itself with nothing else, I just don't think that can be... You're telling me that I can't make that assumption. I just don't think... Aren't you willing to say that if indeed there are secondary considerations in play, this case has to go back for a more nuanced explanation of the balance? Again, your honor, I don't believe that it would have to because of the strength of the obviousness position as... But that's the odd job. The odd job isn't to do the work. I understand that, your honor. You review someone who spares you, and you lay, and you put something on one side and put something on the other side, and there's no evidence of that having happened on the argument, conclusion, of whether or not secondary considerations die in the way of the prima facie case. But what I'm trying to say, your honor, is that you shouldn't even get to the point of the weighing because this is not objective evidence of secondary considerations. This is subjective. And it can't be enough that an inventor can say, I found this not to be obvious. The difference between, for example, that scenario that exists here and the Leo case that's cited is that in Leo, you had an indication 20 years before that it would be... I come back to the point. Show me in your red brief when you made this argument that we should deal with the entire secondary consideration issue by rejecting the information disclosure here as the predicate for the comparison. Show me, please just show me that in your red brief. It's not there. It's not there. Okay, let me just stop you there. It's not there. It came up in our argument. It's a very nice argument. I think it's a very nice argument. I myself questioned why on earth should we let the inventor set the table, right, for the whole discussion on secondary considerations. But that argument is in the brief. Can you show me in your red brief when you're saying we should throw out entire... Sorry, I apologize. You're asking me where in my red brief we cite the fact that subjective information shouldn't be enough? Yes. I apologize because I read... So, for example... Excuse me. No, but it was important to explain that to the information disclosure, so... So, for example, on page 46, when discussing the Leo case, specifically point out the fact that the evidence cited by Xerox here is entirely subjective, consisting of self-serving statements and documents written by the inventors themselves. This argument was made by us. Where are you on that page, on page 46? I'm on page 46, the beginning of the second full paragraph. It actually... It's the second sentence of the first full paragraph. That's right. It actually, you can start, the entire discussion starts above with the paragraph at the bottom of page 45, where we acknowledge that Xerox is citing Leo, and we set out what Leo was and had, and then we say we are not like Leo because Leo provided objective evidence versus here where everything that was cited was subjective evidence. And we then literally cite, and this is at the bottom of page 46, the board properly discussed... Well, I see what your argument is. I mean, you would think that if this were a lynchpin, this were the key argument for knocking down the self-reference, it would show up at the beginning of the argument and say in the very first place, there's no way in your brief that says there's whole secondary consideration argument and there are columns. You don't even have to look at it because there's no predicate. And I agree with Your Honor. I will say that the reason that we set the brief up the way we did was so that it tracked the following of the arguments made by the board below in the order the board made it as well as the arguments that were made by...  Well, the point is that knowing none of the briefs you're getting, we're asking this court to be interpreting an impressionistic painting. I understand. Or perhaps a Pollock painting. We're supposed to look at a Jackson Pollock painting and see where your arguments are. And so this comes up just in the sort of, this is another reason why you're going to get rid of it and not your previous. Again, Your Honor, I apologize. I think it's one of our strongest arguments, but at the time we were trying to make it clear that we were addressing every element that came up. It's almost as if you're trying to hijack the other side because you wait until you get here to develop this argument. Well, but the argument we're making about the... There's no predicate down in your brief, and then you get here and you whack the other side with a fair bit of an argument. Again, I think the argument was fully developed between pages 45 and 47 of the brief. It actually specifically points it out. Counsel, do you, would you contend that all of the secondary considerations evidence that opposing counsel relies on falls in the subjective category as opposed to an objective category? Yes. I see no evidence of anything else. Thank you. I appreciate Your Honor's time and attention. Thank you, Ms. Keith. I mean, you know where we're coming from. I mean, as you say, I think the argument's got a lot of merit. Thank you, Your Honor. And it's certainly easier for us when striking arguments. This is the first time I've seen this argument presented in the context of this, the way these secondary considerations came up. And so it's extremely helpful to the court. I mean, counsel, as good as all of you really are, and I credit your strength, you see this is a new argument. It's a new issue, a new problem. It's something, hey, judges, you should stand up and be aware of this. When it's sort of way down in the bottom of the brief and not particularly phrased out as a significant point, it's just one more of a running set of sentences. You see what I mean? I absolutely do, Your Honor. It warranted a header. We depend on you all to help us see things that are new and different because we're seeing awful lot of the same in the same way. And we're especially seeing awful lot of the same in the same way coming out of the PTAC, right? And so it's really helpful for us when you have a point to make that is important to the body of law, form it up neatly and tightly so everybody can see it and then we have a better chance to get a hold of it. I very much appreciate it, Your Honor. Thank you. Thank you very much. I mean, I don't mean to be harsh with you, but you all know my reputation. I actually appreciate it, Your Honor. We can't get better if we're not given advice. So I appreciate it very much. Thank you. Mr. Ryman, I will leave you two minutes for rebuttal. I'll let you do it. Your Honor, just two very brief points. To Your Honor's point about meat on the bones, what I direct the court's attention to is Appendix 356 through 357. That is our patent owner's response. Thank you.  And on Appendix 356 through 357, Dr. Martin walks through the experimental results, which is what he was referring to later on in our patent owner's response about them being unexpected. And where does this talk, you're saying, even though it doesn't use the phrase unexpected results, you're saying that this single paragraph on page 356 running on to the next page, that is going to be the unexpected results? Yes, Your Honor. Okay. And, Your Honor, whether the evidence was subjective or objective, we contended it was objective. To Your Honor's point about what bucket it fits in, under Leo Pharmaceuticals, which was that case had to do with test results submitted by the inventors. And we talk about this in our reply brief at the bottom of page 30. So Medha was arguing that evidence is subjective. But, again, at Penn site, page 762F.3D at 358, the court in Leo Pharmaceuticals is talking about the test results submitted there. But there weren't test results here, right? I mean, I understand there might be some statements about we have success now or these are statements about why this is a good idea. But there isn't anything saying we tested this, these are our results, here you can see them, right? No, I disagree, Your Honor. I mean, that is exactly what is in the invention proposal and exactly what Dr. Martin is talking about at pages 356 through 357. Those are experimentally derived results. And the invention disclosure talks about previous experiments and then it talks about these experiments that the inventors ran. And so this was not just the inventors. But the phrase is that it improves the accuracy of the method, right? Well, so, Your Honor, so starting on 356, it's talking about, quote, this previous experiment, while quite successful, did not use any proximal scent information for the pages traversed. And then it talks about the very next sentence, to evaluate the performance of the method using proximal scent, the inventors re-ran a small subset of the previous experiments. They were not just praising their own invention. They were running experiments, and that is in the invention disclosure. This is objective evidence.  What is the interpretation of proximal scent in there? Your Honor, we, well, we, even our briefing is that it's synonymous with proximal information. So what interpretation is that, though, of proximal information, since you have two that you're talking about in your briefing? So, Your Honor, we would say, well, what we contend is that it fits with the properly construed proximal information. You mean the one that you were advocating for on appeal? Yes, Your Honor. Absolutely. Okay. Just to be clear. Yes, Your Honor. Okay. Your Honor, depending on any further questions, we ask the Court to reverse or in alternative vacate and remand for the proceedings. Thank you. Can I just ask one quick question? Yes. In terms of the test results that you were talking about on A357, for proximal information, was that was using your definition of proximal net? Yes, Your Honor. Information? Not the board's. Yes, Your Honor. So that preexisted. You had your definition in mind when your expert read before the board, before the petition was ever filed? At what stage in the game were these tests run? It would have been before the application was ever filed. Yes, Your Honor. The eventual proposal was from either 2001 or 2002, before the patent application was filed. And you had in mind the plan construction that you were using at the board way back then. So what I'm trying to get at is what were you testing? Your Honor, you were using proximal information, right? Yes, Your Honor. But the question is whether you were using proximal information as defined by the board or as defined by you. We say defined by us because there's an association between the text and the link. So what I'm saying is that whole distinction existed well before this litigation ever happened. Where's the evidence in the record that supports that point? Your Honor, I'd have to pull up the invention disclosure to find a phrase that supports the association between the text and the link. So if I look at the disclosure, I'll find a definition of proximal information in it that equates with your proposed definition in this case? If Your Honor is looking for a clear statement that says that, no. Your Honor will not find that. We would say that it is clear from the invention disclosure that an association was required. But if Your Honor is looking for a clear statement, no, you will not find that in the invention disclosure. Thank you. Okay. Thank you, counsel. On that point. Yes, Your Honor. Thank you, counsel. The case is submitted on the briefs.